UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADAM ROVINELLI and JENNIFER CARLOS, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>TRANS WORLD ENTERTAINMENT CORPORATION,<br><br>        Defendant | Civil Action No.: 19-CV-11304-DPW |

**DEFENDANT TRANS WORLD ENTERTAINMENT CORPORATION'S REPLY
MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS AND/OR TO STRIKE CLASS ACTION ALLEGATIONS**

                 **DAVIS, MALM & D'AGOSTINE, P.C.**
                 Christopher J. Marino, BBO #655007
                 James E. Gallagher, BBO #677588
                 One Boston Place, 37th Floor
                 Boston, MA  02108
                 (617) 367-2500

                 **DAVIS & GILBERT LLP**
                 Neal H. Klausner (admitted *pro hac vice*)
                 Ina B. Scher (admitted *pro hac vice*)
                 David S. Greenberg (admitted *pro hac vice*)
                 1740 Broadway
                 New York, New York 10019
                 (212) 468-4800

                 *Attorneys for Defendant*
                 *Trans World Entertainment*
                 *Corporation*

**TABLE OF CONTENTS**

Page

**Preliminary Statement** ..................................................................................................................1

**Argument** ......................................................................................................................................2

**I.** **Plaintiffs' Complaint Fails to Adequately Allege a Viable Class** ................................2

    A.    The Court May Properly Strike Class Allegations Where the Issues are Plain From the Pleadings............................................................................................2

    B.    Plaintiffs' Putative Class is Patently Overbroad.......................................................3

    C.    The Class Cannot Be Refined Without Rendering it a Fail-Safe Class ..................5

    D.    The Complaint Itself Shows That Individualized Issues Would Predominate and Overwhelm Common Issues.........................................................6

**II.** **Undisputed Documents Central to Plaintiffs' Claims Show that The Complaint Fails to State a Claim**..................................................................................................................9

    A.    The Court Can Consider the PIN Pad Disclosures and Receipts ...........................9

    B.    TWEC Has Not Misrepresented the Disclosures...................................................10

**Conclusion** ..................................................................................................................................11

**PRELIMINARY STATEMENT**

In *Rovinelli I*, this Court stated that the Plaintiffs' complaint did not "plausibly allege a class action under any theory." (Ex. A. to Opp. Br., at 38:3-4.) Plaintiffs thereafter quickly dismissed that case, and ran to Massachusetts Superior Court to file a "new" case. The new complaint in this action, however, does not include any changes of substance, other than an unsuccessful effort to replead the class size, limiting it to FYE customers in Massachusetts in an attempt to stay in Massachusetts Superior Court – and out of this Court.

Caught in a blatant, failed act of forum shopping, Plaintiffs' opposition papers attempt to confuse the issue by inverting it. Plaintiffs paint defendant Trans World Entertainment Corporation's ("TWEC") removal of this case as "ironic" and "exact[ly] opposite" to TWEC's position in *Rovinelli I*. (Opp. Br. at 3.) But this misrepresents the discussion held at oral argument in *Rovinelli I*. As the transcript confirms, TWEC asserted that <u>if the Court was holding that Plaintiffs' case was not a proper class action</u> – "if this case is an individual case" (Ex. A to Opp. Br. at 30:6-7) – and if plaintiffs were <u>also</u> dismissing their EFTA claims, then there was no independent basis for federal jurisdiction. TWECs removal of the case to this Court, however, is in no way inconsistent with its prior position in this dispute. Indeed, it is <u>this</u> Court and no other that should rule on whether Plaintiffs' can proceed with a class action, and it is <u>this</u> Court that should rule that the case still fails to plausibly allege one. For all of the reasons discussed below and in TWEC's moving papers, the Court should strike the class allegations from the Complaint and/or dismiss this case.

**ARGUMENT**

I.   **PLAINTIFFS' COMPLAINT FAILS TO ADEQUATELY ALLEGE A VIABLE CLASS**

   A.   THE COURT MAY PROPERLY STRIKE CLASS ALLEGATIONS WHERE THE ISSUES ARE PLAIN FROM THE PLEADINGS

While motions to strike class allegations are not granted as a matter of course, courts have not hesitated to grant them where the "issues are plain enough from the pleadings… ." *MSP Recovery Claims, Series LLC v. Plymouth Rock Assurance Corp.*, Civil Action No. 18-cv-11702-ADB, 2019 U.S. Dist. LEXIS 119499, at *25-28 (D. Mass. July 18, 2019) (striking class allegations where (i) putative class alleged in complaint included members with time-barred claims, (ii) class as alleged was a fail-safe class where membership depended on whether defendant was liable, and (iii) individualized issue of whether insurance company failed to make required payments and/or reimburse each class member would predominate over common issues); *see Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp. 3d 264, 273 (D. Mass. 2017) (striking class allegations where putative class included individuals with time-barred claims); *Barrett v. Avco Fin. Servs. Mgmt. Co.*, 292 B.R. 1, 2 (D. Mass. 2003) (striking class allegations where putative class included members over whom the court lacked jurisdiction); *Bearbones, Inc. v. Peerless Indem. Ins. Co.*, Civil Action No. 3:15-30017-KAR, 2016 U.S. Dist. LEXIS 140836, at *29 (D. Mass. Oct. 11, 2016) (striking class allegations in collective action under Fair Labor Standards Act where, *inter alia*, plaintiffs failed to allege factual basis for inference that other potential class members were subject to common policy or plan to underpay insurance policies).  This is indeed a case where the issues are plain from the pleadings.

In addition, Plaintiffs make much of the fact that TWEC cites many decisions on motions for class certification, rather than motions to strike.  This is a distinction without a significant difference, however. As set forth in TWEC's moving papers and herein, these decisions are on

2

point as to the numerous problems that are plain from Plaintiff's Complaint, regardless of at what stage of the proceedings they were issued.

### B. PLAINTIFFS' PUTATIVE CLASS IS PATENTLY OVERBROAD

The putative class alleged in the Complaint consists of

> [A]ll FYE customers in Massachusetts who made an in-store purchase using a debit or credit card and were subsequently charged for VIP Backstage Pass memberships and/or magazine subscriptions.

(Compl. ¶ 54.) This class would plainly include substantial numbers of uninjured customers, as it rests on the patently implausible inference that <u>all</u> FYE customers in Massachusetts who enrolled in either Program were deceived, and that <u>none</u> of them either (i) enrolled and maintained their memberships in order to actually receive discounted magazines, immediate in-store discounts on merchandise, and other benefits or (ii) understood they could cancel, and did cancel, before being charged. Indeed, Plaintiffs' Complaint belies this notion: Plaintiff Carlos alleges that she was solicited for and accepted <u>both</u> Programs (Compl. ¶¶ 28, 30), but she also alleges that she was charged and received no refund for the <u>Magazine</u> Program <u>only</u> (Id. ¶¶ 32, 34.) Carlos therefore either kept her VIP membership or understood that she could cancel – and did so – before she was charged.[1] Thus, as to the VIP Program, even one of the named Plaintiffs in this Action does not allege she was injured. Any FYE customer who joined only the VIP Program and – like Carlos – knowingly maintained their membership or canceled before incurring any charges has suffered no injury.

Plaintiffs argue that these uninjured class members can be removed later via affidavits or deposition testimony, citing *In re: Nexium*, a 2015 First Circuit decision affirming certification of a class that included a *de minimis* number of uninjured members. Yet, under the

---

[1] Unlike Rovinelli, Carlos does <u>not</u> allege that she was charged for VIP membership, canceled and demanded and received a refund, but did not receive a refund of her interest.

3

circumstances of this case, this process would result in impossibly burdensome mini-trials, precisely the situation class actions seek to avoid. Moreover, the First Circuit revisited this very issue less than a year ago and *reversed* class certification that had been granted under similar circumstances. *See United Food & Commer. Workers Unions & Emplrs. Midwest Health Bens. Fund v. Warner Chilcott Ltd. (In re Asacol Antitrust Litig.)*, 907 F.3d 42 (1st Cir. 2018).

In *In re Asacol*, plaintiffs brought a class action on behalf of union sponsored benefit plans and consumers, alleging that pharmaceutical manufacturer Warner Chilcott, had improperly circumvented the expiration of a patent for its ulcerative colitis drug, thereby preventing the creation of generic versions. Plaintiffs alleged that Warner's actions caused them to pay higher prices for the drug. The class, as alleged, included people who would have continued to purchase Warner's branded drug for various reasons, regardless of whether a less expensive generic version had been available. These individuals who would not have switched to a generic drug were thus not injured by Warner's conduct. The district court granted certification, holding that these uninjured class members could later be removed by a claims administrator. *Id.* at 45-47, 51-52. The First Circuit reversed, however, holding that plaintiffs would have to demonstrate injury-in-fact as an element of liability on their antitrust claims, that this injury could not simply be presumed, and that it could not be administratively feasible to prove liability via thousands of affidavits subject to challenge at trial. *Id.* at 53, *distinguishing Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014).

Like the claims in *In re: Asacol*, an injury-in-fact, caused by the defendant's conduct, is a required element of a Chapter 93A claim, and causation and injury are not simply presumed. *See* Mass. Gen. L. ch. 93A § 9(1); *Union St. Corridor-Cmty. Dev. Corp. v. Santander Bank, N.A.*, 191 F. Supp. 3d 147, 153 (D. Mass. 2016). As was the case in *In re: Asacol*,

4

> [T]his is not a case in which a very small absolute number of class members might be picked off in a manageable, individualized process at or before trial. Rather, this is a case in which *any class member may be uninjured…* .

*In re Asacol*, 907 F.3d at 53 (emphasis added). Certification of the overbroad class in this case would be improper, and the Court should strike the overbroad class allegations now.

Plaintiffs rely also upon *Herbert v. Vantage Travel Serv.*, Civil Action No. 17-10922-DJC, 2019 U.S. Dist. LEXIS 55554 (D. Mass. Apr. 1, 2019), arguing again that uninjured class members can be culled out at a later stage by way of affidavit or testimony. In *Herbert*, however, there was no dispute that all of the putative class members had suffered an injury-in-fact when their tours and cruises were altered or canceled, and the defendant did not refund their money. The question in *Herbert* was whether some of those class members had subsequently accepted non-cash compensation from the defendant in the form of a free tour or cruise, in settlement of any claim. *Id.* at *18. The court in *Herbert* specifically noted that in that case the defendants <u>themselves</u> had records to show which members had accepted free tours or cruises, and that based on those records this small group could be first be identified and then culled out via a manageable, individualized process. *Id.* at *19. Clearly, that is not the case in this action, where plaintiffs allege a class of all customers who made an in-store purchase and were charged for VIP memberships and/or magazine subscriptions, regardless of whether they were deceived, misled or confused or not. In this case, <u>only testimony concerning each transaction– by customers, store clerks, and management – could establish whether a given consumer was injured by an alleged misrepresentation, omission or deception</u>.

    **C.**    **THE CLASS CANNOT BE REFINED WITHOUT RENDERING IT A FAIL-SAFE CLASS**

Plaintiffs cite *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 468 (D. Mass. 2018) for the proposition that the Court should not strike their class allegations here

5

because class definitions can be refined once the parties have engaged in discovery. The class alleged in *O'Hara*, however, was completely distinguishable from the class in this case. In *O'Hara*, the plaintiffs had defined their putative class to include all consumers who had purchased Guinness Extra Stout beer while certain alleged misrepresentations had been made about the product being brewed in St. James Gate, Ireland. Defendants argued that this was a fail-safe class, with each consumer's membership determined by whether the beer had been misrepresented to that specific consumer. *See O'Hara*, 306 F. Supp. 3d at 468. Plaintiffs responded that they could revise the class definition so that it referred instead to all consumers who had purchased Extra Stout between specific start- and end-dates, an objective criterion rather than a subjective one. *Id.* In response, the defendant proposed that the end-date be tied to the date on which they began brewing the beer in St. James Gate again. The court then denied the defendants' motion to strike, specifically finding that it appeared likely that the parties were going to resolve their dispute about the scope of the class. *Id.* at 469.

An adjustment like the one proposed in *O'Hara* would not be possible here. There are no objective criteria – no dates or specific locations, for example – by which the class could be defined so that it focuses solely on injured class members. Indeed, Plaintiffs do not even propose a suitable potential revision to the class definition.

### D. THE COMPLAINT ITSELF SHOWS THAT INDIVIDUALIZED ISSUES WOULD PREDOMINATE AND OVERWHELM COMMON ISSUES

Plaintiffs attempt to demonstrate that common issues will predominate in this case, citing three examples of allegedly common issues. (Opp. Br. at 12-13.) Notably, all of these "common" issues Plaintiffs selected actually contain or are comprised of *individualized* questions – "whether Defendant['s]… omissions, concealments, obscurements or misrepresentations… did mislead and deceive consumers" is clearly an individualized issue, as is

6

"whether Defendant… took ***unauthorized*** payments… ." (Emphasis added.) Likewise, even "[w]hether Defendant committed unfair and deceptive acts and practices in charging" the class for VIP memberships or magazine subscriptions turns on whether the individual charged was misled or deceived and did not give proper authorization.

Plaintiffs also assert that reliance is not an element of a 93A claim, and that therefore no showing would be required as to how individual consumers were induced to enroll in the Programs.  (Opp. Br. at 13.)  Even if reliance is not <u>necessarily</u>[2] an element of a Chapter 93A claim, however, Chapter 93A clearly requires a showing of causation, as Plaintiffs acknowledge. "In some cases" – such as this one, which depends on in-person transactions allegedly inducing customers to enroll in the Programs – "reliance constitutes an 'essential link' in the chain of causation that does have to be proven under Chapter 93A." *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 398 (D. Mass. 2007) (emphasis added).

In this case, demonstrating causation will require individualized evidence concerning interactions with store employees, making causation an individualized issue that prevents certification.  Indeed, Judge Casper of this Court recently denied class certification on a Chapter 93A claim due to the individualized nature of the causation element.  *See Plastic Surgery Assocs., S.C. v. Cynosure, Inc.*, Civil Action No. 17-11850-DJC, 2019 U.S. Dist. LEXIS 132152, at *24 (D. Mass. Aug. 7, 2019) (denying certification of putative class of "all individuals and entities in the United States who purchased or leased" defendants' "Non-Invasive [Fat Reduction] Body Contouring Platform," due to individualized nature of causation inquiry into "each sales transaction to determine the customer's baseline knowledge about [the platform] and their interpretations of the representations made by the [defendant's] sales representatives.").

---

[2] *See Baker v. Goldman Sachs & Co.*, 949 F. Supp. 2d 298, 307 (D. Mass. 2013).

Plaintiffs attempt to challenge TWEC's assertion that the allegedly deceptive "scheme" at the heart of the Complaint is premised on individualized in-store transactions, by citing the standard PIN Pad checkout procedure described in Fort Declaration for customers who have accepted and opted to enroll in one or both of the Programs. (Opp. Br. at 13.) This attempt fails for two reasons. First, it ignores the fact that the uniform PIN Pad disclosures to which Plaintiffs refer actually <u>do</u> disclose the material terms. (*Compare* Compl. ¶ 12 (listing material terms) *with* Fort Decl. ¶¶ 6-7, Orzell Dec. Ex. 1 *and* Rivera Decl., Ex. 1.) Second, and more importantly, it fails to take account of the specific allegations of the Complaint, which state, *inter alia*, that the plaintiffs went to different FYE stores, where "<u>an FYE sales representative solicited</u>" <u>them</u> for "free" VIP membership and "free" magazine offers, but allegedly did not give all material information about the Programs before plaintiffs accepted. (*Id.* ¶¶ 18-20, 28-30) (emphasis added). Indeed, each of the customer complaints alleged in the Complaint focuses on a transaction with a clerk, cashier or FYE store employee. (*See id.* ¶ 44.)[3]

In fact, the customer complaints cited in the Complaint themselves confirm that individualized issues will overwhelm any common questions in this case. Putting aside those customers who had <u>no</u> complaints about their enrollment in the Programs, even those who complained report that they were told different things. Some claim they were told only that they could get a "discount card" or a "rewards card;" others say they were told it was "free;" still others say they were told it was a "free trial." (*See id.*) Similarly, some say they were solicited to select magazines, while others claim they signed up for the VIP program and were <u>automatically</u> enrolled in the Magazine Program. (*Id.*) Given these variations among putative class members, this case cannot proceed as a class action.

---

[3] These allegations undercut Plaintiffs' attempts to distinguish *Markarian v. Conn. Mut. Life Ins. Co.*, 202 F.R.D. 60 (D. Mass. 2001), *Kissovski v. Forest Labs., Inc.*, 325 F.R.D. 529 (D. Mass. Aug. 15, 2017) and *Cohn v. Massachusetts Mut. Life Ins. Co.*, 189 F.R.D. 209 (D. Conn. 1999).

8

## II. UNDISPUTED DOCUMENTS CENTRAL TO PLAINTIFFS' CLAIMS SHOW THAT THE COMPLAINT FAILS TO STATE A CLAIM

### A. THE COURT CAN CONSIDER THE PIN PAD DISCLOSURES AND RECEIPTS

Plaintiffs assert that the Court cannot consider their signed receipts or the texts of the PIN Pads, because those documents are extraneous to the Complaint. (Opp. Br. at 6.) The First Circuit has held, however, that under proper circumstances, the court can consider such documents. For example, in *Ironshore Specialty Ins. Co. v. United States,* 871 F.3d 131 (1st Cir. 2017), the court affirmed dismissal of a complaint where the district court had considered a contract that had not been included or explicitly referenced in the complaint, because the claims depended on the interpretation of that contract, the defendants had appended it to their motion papers, and the plaintiff had waived any dispute as to its authenticity. *Id.* at 135–136. *See also Schaefer v. IndyMac Mortg. Servs.*, 731 F.3d 98, 100 n.1 (1st Cir. 2013) (dismissing claim based on mortgage document submitted by defendants that were central to plaintiff's claims); *Estabrook v. United States GSA*, Civil Action No. 16-cv-11772-ADB, 2018 U.S. Dist. LEXIS 210819, at *2 n.1 (D. Mass. Dec. 13, 2018) (dismissing case and considering photograph of site of plaintiff's injury despite non-inclusion in complaint).

The text of the disclosures shown to FYE customers on the PIN Pads, as reflected on the receipts, is at the very heart of Plaintiffs' claims. This fact confirmed by Plaintiffs' opposition papers, which refer to the disclosures as "uniform" in arguing that individualized issues will not predominate. (*See* Opp. Br. at 13-14 (stating that "Defendant uniformly failed to disclose to Plaintiffs and the Class' members all material terms of the memberships and subscriptions in a clear and conspicuous manner" and referencing "the standard operating procedure for all FYE stores, "including the terms disclosed to customers through the PIN Pads."); Orzell Decl.; Rivera Decl.) Moreover, while plaintiffs pay lip service to the notion that they dispute the authenticity

9

of the documents appended to the Fort declaration, their inclusion in their opposing declarations of the PIN Pads images tracking the above language undercut that notion. Plaintiffs cannot have it both ways, relying on the PIN Pad disclosures for the purpose of defending their class allegations, but arguing that the Court should not rely on them in assessing Plaintiffs' claims.

### B. TWEC HAS NOT MISREPRESENTED THE DISCLOSURES

Incredibly, Plaintiffs accuse TWEC of making misrepresentations and omissions to the Court, claiming that the text offered by TWEC is not the text presented to consumers. (Opp. Br. at 17.) This accusation is false. The exhibits to Plaintiffs' supporting declarations track the disclosure language in TWEC's Fort Declaration and its exhibits <u>word-for-word</u>. The language allegedly "missing" according to the declarations of Plaintiffs' investigators' is not missing. The exhibits to Plaintiffs' declarations don't show it only because the investigators declined to scroll and read the entirety of the disclosure. This is despite the fact that the images annexed to Plaintiffs' declarations make it patently obvious that there was additional text available, simply by scrolling down. Indeed, in one instance, the text terminates mid-sentence; in another, only the top half of the next line of text is visible. Willful blindness cannot overcome a party's duty to read a straightforward disclosure that clearly contains limited additional available text.[4] *See Soto v. State Indus. Prods.*, 642 F.3d 67, 78 (1st Cir. 2011) (holding that plaintiff bore the onus of making sure she understood agreement despite her claim that she did not fully understand English)*; Kriegel v. Bank of Am., N.A.*, Civil Action No. 07cv12246-NG, 2010 U.S. Dist. LEXIS 82657, at *29 (D. Mass. Aug. 10, 2010) (dismissing fraud and consumer protection claims where plaintiffs failed to read "straightforward" disclosures presented to them).

---

[4] In fact, this issue concerning whether customers read the full disclosures presented to them is another individualized issue that precludes class certification.

## **CONCLUSION**

For all of the foregoing reasons, as well as those stated in TWEC's moving papers, Defendant Trans World Entertainment Corporation respectfully requests that the Court strike the class action allegations from the Complaint, and/or dismiss Plaintiffs' claims for failure to state viable causes of action, and grant such other relief as the Court deems just and proper.

Dated: New York, New York
August 23, 2019

Respectfully submitted,

**DAVIS & GILBERT LLP**

By: */s/ David S. Greenberg*
Neal H. Klausner  (admitted *pro hac vice*)
Ina B. Scher  (admitted *pro hac vice*)
David S. Greenberg  (admitted *pro hac vice*)
1740 Broadway
New York, New York  10019
(212) 468-4800
nklausner@dglaw.com
ischer@dglaw.com
dgreenberg@dglaw.com

**DAVIS, MALM & D'AGOSTINE, P.C.**
Christopher J. Marino, BBO #655007
James E. Gallagher, BBO #677588
One Boston Place, 37th Floor
Boston, MA  02108
(617) 367-2500

*Attorneys for Defendant*
*Trans World Entertainment Corporation*

**CERTIFICATE OF SERVICE**

I, David S. Greenberg, hereby certify that a true copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this August 23, 2019.

*/s/ David S. Greenberg*
David S. Greenberg
(admitted *pro hac vice*)
